## Commonwealth *v.* Domotor, Appellant.

*Criminal law—Fraudulent conversion—Failure to prove loss— —Evidence—Insufficiency—Act of May 18, 1917, P. L. 241.*

In the trial of an indictment for fraudulent conversion, the evidence was that the defendant had received a sum of money from the prosecutor, for whom he had gone bail; that defendant had transferred the money to a third person in consideration of a mortgage to the prosecutor, and that the value of the real estate so mortgaged was greater than the amount of the lien.   There was also evidence that the prosecutor had directed that the interest on the mortgage be paid to his wife.

In such case, there was not sufficient evidence to sustain a conviction, and the defendant will be discharged.

Argued October 10, 1924.   Appeal, No. 211, Oct. T., 1924, by defendant, from judgment of Q. S. Phila. Co.,

March Sessions, 1923, No. 476, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Paul Domotor, otherwise Paul Demotis.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Indictment for fraudulent conversion under the Act of May 18, 1917, P. L. 241.   Before LEWIS, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed.   Defendant appealed.

*Error assigned* was, among others, the charge of the court.

*Alfred E. Reynolds,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney.

OPINION BY HENDERSON, J., February 27, 1925:

The defendant was convicted in the municipal court on a charge of the fraudulent conversion of $5,030, the property of the prosecutor, John Moll, and the appeal is from the judgment of the court imposing a sentence of nine months' imprisonment.   The indictment was drawn under the Act of May 18, 1917, P. L. 241.   It appears from the evidence that the prosecutor had been arrested on two or more criminal charges; that the defendant became bail for his appearance at court and that, as testified to by the prosecutor, he placed in the hands of the defendant a sum of money to secure the latter in case of the failure of the defendant in those cases to appear on his recognizance and abide the result of the trials which were to be had.   The evidence is not clear as to the amount of money transferred to the defendant; $1,500 at least of the sum named in the indictment did

not come into the defendant's possession as we may conclude from the evidence both of the Commonwealth and the defendant. The amount with which the defendant seems to have been chargeable was about $3,200, or perhaps $3,500, according to one construction of the testimony of the prosecutor. No competent evidence was offered at the trial that the cases in which the defendant had become bail for the prosecutor were finally disposed of. The most favorable statement in support of the prosecution on that point is contained in the charge of the court in the following language: "It is not strenuously denied that the criminal actions have been practically disposed of. So that you start out with those things that are admitted or practically admitted." Moll testified that he was in court and was tried and was acquitted on one of the charges and convicted on the other. This is the only testimony tending to show the manner in which the criminal cases were disposed of. The basis for the understanding of the court that it was not strenuously denied that the criminal actions had been practically disposed of was apparently a colloquy between the counsel for the prosecution and the defense in which the former said to the latter:

"Do you admit there are any (other charges pending)? To which one of the defendant's counsel replied:

"I don't know that there are any. It is agreed—"

Mr. Tracey (for the Commonwealth): "No, it is not agreed. I don't know. I imagine there is not. You would know whether your client went bail."

Mr. Berkowitz (for defendant): "I know as far as the criminal cases are concerned he was arrested several times on a capias. I don't know anything about that. I am only concerned in what I know about the criminal matters."

Assuming that the money was transferred to the defendant as testified to by the prosecutor the evidence falls short of showing the conditions of the defendant's responsibility as bail for the prosecutor, and the case

might well have been disposed of for that reason. Passing that question however and coming to the case as submitted to the jury we have the inquiry whether the evidence showed a fraudulent conversion by the defendant. It was not controverted that the smaller sum above named was received by the defendant from the prosecutor by a transfer of credits which the latter had in two banks in Philadelphia. It was in evidence without contradiction that this money was given by the defendant to Mrs. Elizabeth Lockey, of Phœnixville, Pa., and about $1,500 was received by her from the prosecutor through the private bank of John Nemith, Jr., where it had been on deposit, for which sums Mrs. Lockey executed a mortgage or mortgages to the prosecutor on real estate owned by her in Phœnixville, which real estate was of much larger value than the amount of the mortgage. It was further shown that the prosecutor directed that payments of interest on this mortgage be given to his wife and that she was paid $220 of interest. The evidence for the defendant tended strongly to show that the prosecutor had arranged with Mrs. Lockey to lend her this money before the prosecutions against him were tried. John Stanojer, a clerk in the Nemith bank, called both for the Commonwealth and the defense, testified directly and emphatically that the prosecutor told him "about a dozen times" that he was going to take a mortgage on Mrs. Lockey's property at Phœnixville. This was denied by the prosecutor, but as Mr. Stanojer was a disinterested witness and was also corroborated by the defendant and Mrs. Lockey, it is difficult to understand how the jury arrived at the verdict returned, as the case for the Commonwealth rested wholly on the testimony of the prosecutor. The result may have been reached by misapprehension by the jury with respect to a part of the charge of the court wherein they were instructed as follows: "If he (the defendant) used that money for a purpose other than as agreed

upon you will be justified in finding him guilty of embezzling that money." The word "embezzling" was inadvertently used and the jury may have understood the instruction to mean that the turning of the money over to Mrs. Lockey without reference to the execution of the mortgage to the prosecutor was in itself the crime charged in the indictment. As there was no denial of the defendant's evidence that the property mortgaged was of a value greatly in excess of the liens thereon, and as there was no denial that the interest on the mortgage was paid to the prosecutor's wife by his discretion, it became important to take account of the exact nature of the offense charged. If the defendant, in the belief that the prosecutor wished to lend to Mrs. Lockey the money in question, delivered it to her and caused a mortgage in the name of the prosecutor to be taken on real estate which furnished an adequate security, the prosecutor sustained no loss. Neither Mrs. Lockey nor the defendant acquired the money, nor was there a fraudulent conversion thereof. The statute is evidently aimed at an act done whereby the injured party is defrauded. If the defendant had placed the money in a bank and taken a certificate of deposit therefor in the name of the prosecutor, it would hardly be contended that that was an act forbidden by the statute. It is conceivable that the conduct of one holding a fund under such circumstances might be so reckless that the loss of the fund would be charged as a fraudulent conversion, but in the absence of a wicked purpose or an act resulting in loss to the depositor of the fund, or any dishonest advantage to the accused or some other person, the facts would not support a conviction. The case as presented, we think, is lacking in evidence tending to show that the defendant perpetrated a fraud on the prosecutor, or that he fraudulently converted the money received by him to his own use or to the use of another person. The defendant was entitled to the instruction that the prosecutor failed to

prove such a state of facts as would support a conviction.

The judgment is therefore reversed and the defendant is discharged from his recognizance.